IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JAMES R. LARKIN,<br><br>        Plaintiff,<br><br>v.<br><br>SNOWBIRD RESORT, LLC dba<br>SNOWBIRD SKI & SUMMER RESORT, a<br>Delaware limited liability company,<br><br>        Defendant. | MEMORANDUM DECISION AND<br>ORDER GRANTING MOTION FOR<br>SUMMARY JUDGMENT<br><br><br>Case No. 2:18-CV-605 TS-CMR<br><br>District Judge Ted Stewart |

This matter is before the Court on Snowbird Resort, LLC's ("Snowbird") Motion for Summary Judgment. For the following reasons, the Court will grant the Motion.

I.    BACKGROUND

Snowbird operates an outdoor recreational resort that offers, among other things, skiing.[1] Around February 2015, Snowbird hired Plaintiff James Larkin ("Mr. Larkin") as a public safety officer.[2] Mr. Larkin's work duties related to protecting Snowbird's property and providing law enforcement, security, and safety.[3] Also, as a Snowbird public safety officer, he was to "display sound judgment" and observe "legal and department guidelines."[4]

On approximately December 26, 2016, Mr. Larkin and a fellow public safety officer, Shelby Smith ("Ms. Smith"), left the public safety office to purchase coffee and close a gate.[5] When they returned, Brian Clement ("Mr. Clement"), another public safety officer, said "let me

---

[1] *See* Docket No. 2 ¶ 3.

[2] *See* Docket No. 15 ¶ 1.

[3] *See Id.* ¶ 2.

[4] *See* Docket No. 15-2, at 3.

[5] *See* Docket No. 15 ¶ 6.

see your knees."[6] Mr. Larkin interpreted this comment to be sexual in nature.[7] The next day, Ms. Smith reported to Mr. Petersen and Mr. Svitak that she had been sexually harassed.[8] Mr. Larkin provided a statement regarding Ms. Smith's complaint.[9] Subsequently, Mr. Clement and Ms. Smith both received negative event records.[10]

On or about February 11, 2017, Mr. Larkin took a notepad belonging to his supervisor, Mr. Petersen, out of Mr. Petersen's assigned cubby and left it on a desk in the back area of the public safety office.[11] Mr. Larkin claims he did so because he needed paper to write on.[12] The next day, a coworker informed Mr. Larkin that the notepad was on the back area desk, and the two employees read the notepad's contents.[13] The notepad contained handwritten notes from a managers' meeting stating, among other things, "[k]eep Kelli and anyone away from Shelby."[14] At that time, Mr. Larkin did not know what the handwritten note meant, but he believed that the note evidenced Snowbird's attempt to isolate, ostracize, and harass Ms. Smith (Shelby) because she filed a sexual harassment complaint.[15] Mr. Larkin put the notepad down his pants, left the public safety office, and took pictures of the handwritten note which he sent to Ms. Smith.[16] This was not the first time Mr. Larkin removed a co-worker's property from the cubbies. Prior to the

---

[6] *See id.* ¶ 7.
[7] *See id.* ¶ 8.
[8] *See id.* ¶ 9; Docket No. 22, at 4.
[9] *See* Docket No. 15 ¶ 10.
[10] *See id.* ¶ 11.
[11] *See id.* ¶¶ 13, 16.
[12] *See* Docket No. 15-5, at 40:6–9.
[13] *See* Docket No. 15 ¶ 16.
[14] *See id.* ¶ 18.
[15] *See id.* ¶¶ 19–20.
[16] *See id.* ¶¶ 21–22.

notebook incident, Mr. Larkin was verbally reprimanded after he took a co-worker's chest pack out of the cubbies and put another person's name on it.[17]

On February 13, 2017, Mr. Larkin—believing the notepad belonged to Mr. Svitak—showed pictures of the handwritten note to Mr. Petersen.[18] Mr. Petersen did not tell Mr. Larkin that the notes were actually his, and he suspended Mr. Larkin without pay pending an investigation because Mr. Larkin's conduct "caused disbelief, anger, internal strife, contention, and an overall lack of trust by managers, supervisor[s], [the] assistant director, [the] director[,] and fellow officers."[19] On March 2, 2017, Mr. Larkin was informed that his employment had been terminated effective February 22, 2017, because management and staff had lost confidence and trust in him.[20] Thereafter, Mr. Larkin filed a claim with the Utah Antidiscrimination and Labor Division ("UALD"), which authorized Mr. Larkin to file this suit.[21]

Snowbird moves for summary judgment and argues that Mr. Larkin was fired because management lost confidence in his ability to be a public safety officer as evidenced by him taking Mr. Petersen's notebook.[22] In response, Mr. Larkin asserts that Snowbird's stated reason for his termination is pretextual, and a jury should weigh the evidence to determine whether Mr. Larkin was retaliated against for engaging in protected activity.[23]

---

[17] *See id.* ¶ 14; *see also* Docket No. 22-2, at 42:6–13, 43:13–19.

[18] *See* Docket No. 15 ¶¶ 23–24.

[19] Docket No. 2 ¶ 19; *see also* Docket No. 15 ¶ 25.

[20] Docket No. 15 ¶ 26; Docket No. 2 ¶ 23.

[21] *See* Docket No. 15-9, 15-10.

[22] *See* Docket No. 15, at 1–2.

[23] *See* Docket No. 22, at 2.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[24] "An issue is genuine if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[25] A fact is material "if under the substantive law it is essential to the proper disposition of the claim."[26] In assessing a summary judgment motion, the Court may look to the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits."[27] In considering whether a genuine dispute of material fact exists, the Court determines whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[28] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[29] It is improper for the Court to make credibility determinations or weigh the evidence as those are jury functions, not those of a judge.[30]

## III. ANALYSIS

When a plaintiff relies on circumstantial evidence to support a retaliation claim, the Court applies "the three-step burden-shifting framework set forth in *McDonnell Douglas* and its

---

[24] FED. R. CIV. P. 56(a).

[25] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (internal quotation marks omitted).

[26] *Id.*

[27] *See Plotke v. White*, 405 F.3d 1092, 1093 (10th Cir. 2005) (quoting FED. R. CIV. P. 56(c)).

[28] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[29] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[30] *Plotke*, 405 F.3d at 1094.

progeny."[31] "*McDonnel Douglas* first requires the aggrieved employee to establish a prima facie case of prohibited employment action."[32] "If the employee makes a prima facie showing, the burden shifts to the defendant employer to state a legitimate, 'nondiscriminatory reason' for its 'adverse employment action.'"[33] "If the employer meets this burden, then summary judgment is warranted unless the employee can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual."[34]

For purposes of its Motion, Snowbird assumes that Mr. Larkin has established his prima facie retaliation claim.[35] The burden, therefore, is on Snowbird to show that it had a legitimate, nondiscriminatory reason to fire Mr. Larkin. Snowbird submits that Mr. Larkin was fired because "Snowbird lost trust and confidence in his ability to perform his job as a Public Safety Officer[] . . . because he failed to comply with company policies," as evidenced by him taking Mr. Petersen's notepad out of his cubby after previously being reprimanded for taking a co-worker's chest pack out of the co-worker's cubby.[36] Mr. Larkin does not dispute that he took his co-worker's chest pack out of his cubby and that he was "spoken to and asked about it and admitted it . . . [and] was told, Don't do it again . . . ."[37] Mr. Larkin also does not dispute that he took Mr. Petersen's notepad out of his cubby, put it down his pants, and took pictures of the handwritten

---

[31] *Id.* at 1099; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800–07 (1973).

[32] *Plotke*, 405 F.3d at 1099.

[33] *Id.* (quoting *Wells v. Colo. Dep't of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003)).

[34] *Id.*; *accord Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir. 2000).

[35] *See* Docket No. 15, at 6.

[36] *See id.* at 7.

[37] *See* Docket No. 22-2, at 43:13–19.

note that he sent via text message to Ms. Smith.[38] Accordingly, the Court concludes that Snowbird has produced a legitimate, non-discriminatory reason for its decision.

Mr. Larkin argues that Snowbird's explanation is pretextual. Mr. Larkin can demonstrate pretext by producing evidence of "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."[39] The Court is also mindful that "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment."[40]

Importantly, "[t]he evidence which [a plaintiff] can present in an attempt to establish that [the employer's] stated reasons are pretextual may take a variety of forms."[41] A plaintiff typically makes a pretextual showing in three ways:

> (1) with evidence that the defendant's stated reason for the adverse employment action was false; (2) with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by the defendant under the circumstances; or (3) with evidence that the defendant acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the plaintiff.[42]

---

[38] *See* Docket No. 15 ¶¶ 21–22; Docket No. 22, at 7 ("Larkin does not dispute Snowbird's SOF Nos. 20–24").

[39] *Morgan v. Hilti, Inc.* 108 F.3d 1319, 1323 (10th Cir. 1997) (internal quotation marks and citations omitted).

[40] *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988).

[41] *Patterson v. McLean Credit Union*, 491 U.S. 164, 187 (1989).

[42] *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000) (citations omitted).

Plaintiff can also show that that the "employer's proffered non-discriminatory reasons [were] either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)."[43]

Mr. Larkin argues pretext based on "the timing of his termination, the flawed and cursory investigation by Snowbird to conduct its investigation and terminate his employment, the post hoc documentation, and because Snowbird's reasons for terminating Larkin are unworthy of credence."[44] Snowbird responds by arguing that these reasons are inadequate to establish pretext.[45]

Mr. Larkin's first argument—that the timing of his termination demonstrates pretext—standing alone, is inadequate to establish pretext.[46] It is, however, "one relevant factor to be considered," but must be accompanied by "circumstantial evidence of retaliatory motive" to preclude summary judgment.[47] Snowbird argues that this factor does not necessarily favor Mr. Larkin because Mr. Larkin's "complaint of retaliation stemmed directly from the conduct that led to Larkin's subsequent suspension."[48] In other words, Snowbird's proffered reason for termination—that Mr. Larkin took his supervisor's notebook—occurred in close temporal proximity to Snowbird's alleged retaliatory behavior. A reasonable factfinder could conclude that this factor favors either

---

[43] *Plotke*, 405 F.3d at 1102–03 (internal quotation marks and citation omitted) (alteration in original).

[44] *See* Docket No. 22, at 16.

[45] *See* Docket No. 29, at 17.

[46] *See Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1172 (10th Cir. 2006) (concluding that temporal proximity is insufficient to establish pretext on its own but may be a relevant factor).

[47] *Id.*

[48] Docket No. 29, at 18.

Mr. Larkin or Snowbird and therefore this is a disputed fact. This alone, however, is not a material dispute because proof of temporal proximity, without more, is insufficient to defeat summary judgment.[49]

Mr. Larkin next attacks Snowbird's proffered reason by arguing that Snowbird's investigation leading to termination was cursory and flawed.[50] Mr. Larkin relies on *Trujillo v. PacificCorp*, for the proposition that where an employer conducts a flawed investigation that leads to termination, a court can infer pretext.[51] In *Trujillo*, Mr. and Mrs. Trujillo alleged that PacifiCorp terminated them because of the healthcare costs associated with their son's illness.[52] PacifiCorp argued that they were fired because they falsified time records in order to earn compensation for time they had not worked.[53] The Trujillos argued that PacifiCorp's rationale was pretextual, and that a flawed investigation into the falsified records demonstrated that they were wrongfully terminated.[54] The court concluded that inferences of pretext could be "drawn from the irregularity of PacifiCorp's actions in the course of the time theft investigation."[55] The *Trujillo* court was particularly troubled by the methodology used to investigate complaints of time theft, and the fact that the Trujillos' supervisor, who signed off on

---

[49] *See Medina v. Income Support Div.*, 413 F.3d 1131, 1137–38 (10th Cir. 2005) (concluding that temporal proximity, without more, is insufficient to preclude summary judgment).

[50] *See* Docket No. 22, at 16.

[51] *See Trujillo v. PacifiCorp*, 524 F.3d 1149 (10th Cir. 2008).

[52] *Id.* at 1154.

[53] *Id.* at 1158.

[54] *Id.* at 1159–60.

[55] *Id.* at 1159.

their time sheets, was never interviewed regarding the alleged wage theft.[56] The Court held that "failure to conduct what appeared to be a fair investigation of the Trujillos' alleged time theft," among other factors, created a genuine issue of material fact.[57]

This case, however, is unlike *Trujillo* because Mr. Larkin does not argue that Snowbird's investigation involved flawed investigatory methodologies or that certain key witnesses were not interviewed. Instead, Mr. Larkin argues that Snowbird's investigation was cursory and flawed because Mr. Petersen participated in the investigation and Mr. Larkin believed that Mr. Petersen was the one retaliating against him.[58] Further, Snowbird's other decisionmakers simply rubberstamped Mr. Petersen's conclusions without conducting their own separate investigation.[59] An allegation that an employer's internal investigation was not conducted by a wholly-neutral third-party does not necessarily lead to the conclusion that an investigation is cursory and flawed. This is especially true when there is little to investigate because the employee admitted to the conduct. Mr. Larkin makes no argument about why Mr. Petersen's methodology or conclusions were erroneous. Indeed, Mr. Larkin admits that he took Mr. Petersen's notebook after being warned about taking his co-worker's property from the cubbies. Here, unlike *Trujillo*, Snowbird obtained the factual basis underlying its proffered reason by Mr. Larkin's own confession rather than through flawed methodologies. Further, unlike *Trujillo*, key witnesses were unnecessary here because Mr. Larkin admitted to the

---

[56] *Id.*

[57] *Id.* at 1160.

[58] *See* Docket No. 22, at 17.

[59] *Id.*

9

conduct. Thus, Mr. Larkin has not established a genuine issue of material fact regarding this issue.

Mr. Larkin's third argument—that Snowbird suspiciously documented events regarding Mr. Larkin between the date he complained and his suspension—does not create a genuine issue of material fact. Mr. Larkin is correct that post hoc fabrication of non-discriminatory reasons evidenced by after-the-fact documentation supports a pretext finding.[60] Mr. Larkin cites *Pastran v. K-Mart Corp*, to demonstrate that a factual issue exists regarding whether Snowbird concocted a post hoc rationale and documentation for Mr. Larkin's termination. In *Pastran*, Mr. Pastran alleged that K-Mart did not promote him to manager and ultimately terminated him based on his sex and national origin.[61] K-Mart argued that Mr. Pastran was fired for insubordination when he told management that he would not open a cash register.[62] As evidence of pretext, Mr. Pastran argued that two store managers discussed preparing statements in anticipation of litigation shortly before terminating the plaintiff, and a manager read a written statement telling him he was fired.[63] The Court concluded that this evidence "[i]n combination with the evidence of temporal proximity" and the fact that a district manager reprimanded the store manager for passing on Mr. Pastran for a promotion was enough to raise an issue of material fact, but it was "a close case."[64]

---

[60] *See Plotke*, 405 F.3d at 1102–03; *Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1204–06 (10th Cir. 2000); *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994).

[61] *Pastran*, 210 F.3d at 1204.

[62] *Id.*

[63] *Id.* at 1206.

[64] *Id.* at 1206–07.

The present case is easily distinguishable from *Pastran*. In *Pastran* the post hoc collaboration and documentation were used to terminate Mr. Pastran, while here, any suspicious, post hoc documentation was unrelated to Mr. Larkin's termination. Specifically, Mr. Larkin provides five examples of post hoc documentation by Snowbird.[65] The first, is an email sent shortly after Mr. Larkin was suspended that documents an inappropriate comment Mr. Larkin allegedly made months earlier.[66] The second, is an event record that discussed Mr. Larkin removing a co-worker's chest pack from his cubby.[67] The third and fourth relate to Mr. Larkin and a co-worker joking and recording Snowbird surveillance footage with a cellphone that the co-worker later joked about and showed to others.[68] Fifth, a Snowbird employee sent two emails about incidents that happened on unknown dates.

Only one of these examples is germane to Snowbird's reason for Mr. Larkin's termination. Snowbird has consistently stated that it terminated Mr. Larkin for removing a supervisor's notepad from his cubby, sticking it down his pants, and photographing its contents to send to a co-worker. Further, Mr. Larkin admits that he was verbally warned about not removing items from his co-worker's cubbies sometime before the notebook incident. Mr. Larkin's second example, the event report documenting Mr. Larkin removing his co-worker's chest pack, is related to his firing, but is not post hoc documentation because it merely memorialized a verbal warning that occurred prior to the notebook incident and his suspension. Thus, Mr. Larkin has not shown how

---

[65] *See* Docket No. 22, at 18.

[66] *See* Docket No. 15-4, at 2.

[67] *See* Docket No. 22-16, at 2.

[68] *See* Docket No. 22-20, at 2; Docket No. 22-21, at 2.

Snowbird's stated reason is undermined by a post hoc fabrication since there was no fabrication here.

Finally, Mr. Larkin argues that Snowbird's rationale for firing Mr. Larkin is unbelievable because Snowbird was dishonest about a material fact and thus a factfinder could infer that this dishonesty is affirmative evidence of guilt.[69] Specifically, Mr. Larkin alleges that Mr. Petersen did not tell Mr. Larkin that the notebook was his when Mr. Larkin confronted him about the notes.[70] Further, Mr. Paterson, Snowbird's human resources director, was aware that Mr. Petersen withheld this information from Mr. Larkin but still fired him. The Court concludes that this is insufficient to find that Snowbird's stated rationale is pretext. It does not logically follow that because Mr. Petersen did not tell Mr. Larkin that the notebook was his that Mr. Larkin was not fired for Snowbird's stated reason. Further, whether the notes belonged to Mr. Svitak, as Mr. Larkin believed, or to Mr. Petersen is immaterial to dispute the stipulated fact that Mr. Larkin took a notebook that he knew did not belong to him after he was warned about removing his co-worker's property from the cubbies.

---

[69] *See* Docket No. 22, at 19.

[70] *See id.* at 19–20.

## IV. CONCLUSION

It is therefore

ORDERED that Snowbird's Motion for Summary Judgment (Docket No. 15) is GRANTED.

DATED February 6, 2020

BY THE COURT:

Ted Stewart
United States District Judge